IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TERRENCE RICHARDSON, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | C.A. No. 10-162 |
| | ) | Magistrate Judge Maureen P. Kelly |
| RYAN AUMENT, | ) | |
| | ) | [ECF No. 18] |
| Defendant. | ) | |

**OPINION**

KELLY, Magistrate Judge

Plaintiff, Terrence Richardson is prisoner currently incarcerated at the State Correctional Institute – Forest ("SCI Forest"). He commenced this action against Defendant Ryan P. Aument, who serves as the Clerk of the Court of Common Pleas for Lancaster County, Pennsylvania. Plaintiff alleges violations of his rights to equal protection under the Fourteenth Amendment of United States Constitution as well 42 U.S.C. § 1981. Earlier this year, Plaintiff withdrew his Section 1981 claim, and appears to proceed forward pursuant to 42 U.S.C. § 1983. [ECF No. 25]. Pending before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed.R.Civ.P. 12 (b)(6), or in the Alternative, to Transfer Venue ("Motion to Dismiss"). As required by 28 U.S.C. § 1915(e) (2) (B), the Court has screened the instant Complaint and the Complaint is dismissed with prejudice. Accordingly, Defendant's Motion to Dismiss is denied as moot.

**I. IN FORMA PAUPERIS PROCEEDINGS**

By Order dated July 26, 2010, Plaintiff's Motion to Proceed <u>In Forma Pauperis</u> ("IFP") was granted with respect to the present action. [ECF Doc. No. 4]. Title 28 of the United States

Code, section 1915 establishes the criteria for allowing an action to proceed IFP without prepayment of costs. Section 1915(e) (as amended)[1] requires the federal courts to review complaints filed by persons who are proceeding IFP and to dismiss, *at any time*, any action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(emphasis added). A determination of frivolousness applies equally to cases that are factually frivolous and those that are legally frivolous. Neitzke v. Williams, 490 U.S. 319, 327-28, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). An action is legally frivolous if it is based upon an indisputably meritless legal theory. Wilson v. Rackmill, 878 F.2d 772, 774 (3d Cir.1989). Indisputably meritless legal theories are those "in which it is ... readily apparent that the plaintiff's complaint lacks an arguable basis in law...." Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir.1990). "[T]he frivolousness determination is a discretionary one," and trial courts "are in the best position" to determine when a complaint is appropriate for summary dismissal. Denton v. Hernandez, 504 U.S. 25, 33, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992).

In reviewing complaints under 28 U.S.C. § 1915(e)(2)(B), a federal court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12 (b)(6). See, e.g., Porter v. Cancelmi, C.A. No. 04-1736, 2006 WL 3490589 (W.D. Pa. 2006), *aff'd*, 318 F.App'x. 48 (3d Cir. 2008). To survive a motion to dismiss, "a plaintiff must allege facts that raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact)." Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d

---

[1] Congress adopted major amendments to Section 1915 in the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 10-134, 110 Stat. 1321 (1966) in an effort to curb the increasing number of frivolous and harassing law suits brought by persons in custody.

2

Cir.2007) (citing, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)), Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008).

## II. DISCUSSION

Plaintiff's Complaint purports to raise a claim that he has been harmed by the failure of the Defendant to accept for filing, and then forward to the Lancaster County District Attorney, copies of "Negotiable Instruments," "that were presented under Notary Seal causing the continued incarceration" of Plaintiff "against his will." As damages, Plaintiff seeks the "discharge of all debts, obligations, Judgments owed to Commonwealth of Pennsylvania by liquidating the sum certain against Defendant's Bond or Insurance." [ECF No. 5]. Plaintiff attempts to clarify his claim in his "motion for summary judgment" filed in response to Defendant's Motion to Dismiss and attaches a notarized "Presentment Letter." [ECF No. 21]. This letter purports to "present" to Defendant "instruments," including his "Sentencing Order, Police Criminal Complaint, Information, Court Order from April 8th, 2010, Participant Accounting Report and Sentencing Status Summary," all arising out of his conviction for murder. [ECF No. 19-1. p. 2]. The Presentment Letter declares that these documents are:

> Being Accepted for Value and Returned for Value, and For Settlement and Closure in accord with House Joint Resolution – 192 73-10 and 27 CFR 72-11 for Case # CP-36-CR-0002246-2004 and Account # 36-3005-P10142, To Satisfy All Debts/Obligations/Judgments owed to The COMMONWEALTH OF PENNSYLVANIA by TERRENCE TERRELL RICHARDSON."

[ECF No. 21, p.7]. The "Presentment Letter" directs the Defendant to file the "instruments" and forward them to the District Attorney within 3 days and that if a time stamped copy of the "instruments" is not returned within 3 days, a "Certificate of Non-Response/Non-Performance" will issue. Id. Plaintiff contends that pursuant to "U.C.C. § 3-603," these "instruments," have been tendered for payment to discharge the obligations he may owe to the Commonwealth of

Pennsylvania including, apparently, his current sentence for his conviction for murder. Plaintiff contends that the refusal of his tender operates to discharge his obligation to the Commonwealth.[2] Id. [ECF No. 19-1, p.2].

Not surprisingly, the Defendant did not file the documents or act upon the Presentment Letter, which the Plaintiff contends caused him to be unconstitutionally deprived of liberty, entitling him to $1.6 million dollars "for each day he has suffered from the unconstitutional deprivation of right to liberty since June 19, 2010."

---

[2] 13 Pa.Cons.Stat.Ann. § 3603 provides:

(a) Applicability of contract law.--If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument, the effect of tender is governed by principles of law applicable to tender of payment under a simple contract.

(b) Effect of refusal of tender of payment.--If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument and the tender is refused, there is discharge, to the extent of the amount of the tender, of the obligation of an indorser or accommodation party having a right of recourse with respect to the obligation to which the tender relates.

(c) Obligation to pay interest discharged.--If tender of payment of an amount due on an instrument is made to a person entitled to enforce the instrument, the obligation of the obligor to pay interest after the due date on the amount tendered is discharged. If presentment is required with respect to an instrument and the obligor is able and ready to pay on the due date at every place of payment stated in the instrument, the obligor is deemed to have made tender of payment on the due date to the person entitled to enforce the instrument.

Additionally, 13 Pa.Cons.Stat.Ann. § 3104, defines "negotiable instrument" as follows:

(a) Definition of "negotiable instrument".--Except as provided in subsections (c) and (d), "negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:

(1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;

(2) is payable on demand or at a definite time; and

(3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain:

(i) an undertaking or power to give, maintain or protect collateral to secure payment;

(ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral; or

(iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

(b) Definition of "instrument".--"Instrument" means a negotiable instrument.

This alleged nonfeasance, however, does not give rise to the violation of a right, privilege or immunity secured by the Constitution or law of the United States, and therefore fails to state a claim upon which relief may be granted.

Plaintiff's self-styled cause of action is predicated upon a manipulation of the Uniform Commercial Code's provisions for the tender of lawful negotiable instruments. The United States Court of Appeals for the Third Circuit in Monroe v. Beard, 536 F.3d 198, 203, fn. 4 (3d Cir. 2008), has recognized a pattern of prisoner use of the Uniform Commercial Code to fraudulently file judgments and liens and the burdens these filings are creating in the judicial system:

> Further investigation revealed that various publications were advocating the exploitation of the UCC filing process and provided explicit instructions on how to perfect these fraudulent security interests, including sample financing statements forms. One instruction book, *Cracking the Code,* calls for the use of commercial law to resist authority, including the correctional and judicial systems. The book adheres to the "Redemptionist" theory, which propounds that a person has a split personality: a real person and a fictional person called the "strawman." The "strawman" purportedly came into being when the United States went off the gold standard in 1993, and, instead, pledged the strawman of its citizens as collateral for the country's national debt. Redemptionists claim that government has power only over the strawman and not over the live person, who remains free. Individuals can free themselves by filing UCC financing statements, thereby acquiring an interest in their strawman. Thereafter, the real person can demand that government officials pay enormous sums of money to use the strawman's name or, in the case of prisoners, to keep him in custody. If government officials refuse, inmates are encouraged to file liens against correctional officers and other prison officials in order to extort their release from prison. Adherents of this scheme also advocate that inmates copyright their names to justify filing liens against officials using their names in public records such as indictments or court papers. *See* Fairall Decl. ¶ 8; Shiffman, *Defendants Go on the Offensive,* [PHILADELPHIA INQUIRIER, June 6, 2004], at B1, B4.

Monroe v. Beard, 536 F.3d 198, 203, n.4 (3d Cir. 2008)(emphasis added). See also Troxelle v. U.S., 319 F.App'x. 176 (3d Cir. 2009) (summarily affirming the dismissal of a "frivolous"

complaint alleging damages for involuntary servitude arising out of the state use of his name in official documents as legally "unintelligible" and lacking a basis in law or cognizable cause of action). Plaintiff's attempted filing of his "Presentment Letter" is simply a preliminary step in this unlawful scheme or variation thereof.

Against this framework, it is clear that Plaintiff's action is both frivolous and malicious. See Rodriguez-Isona v. Rendell, C.A. No. 1:08-0403, 2008 WL 1787548 (M.D. Pa. 2008) (petitioner's application to proceed IFP dismissed as frivolous where petition sought a judgment in the amount of $50,000,000 citing purported violations of the Uniform Commercial Code and respondents' alleged default on a nonexistent security agreement.). Here, Plaintiff's Complaint and numerous other filings show no evidence of any actual bonds or legitimate security interests. Under strikingly similar circumstances, the court in Contreras v. Wischkaemper, No. 2:08-CV-162 JLH, 2008 WL 4643167 (E.D. Ark. 2008), opined "[t]he idea that a criminal conviction would give rise to enforceable liens … and that enforcement of those liens would result in the release of the plaintiff and substantial money damages, is 'wholly incredible.'" The court further determined that a factual finding of frivolousness was appropriate because the allegations rose to the level of irrational. Id., (citing Denton v. Hernandez, 504 U.S. 25, 33, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992)("a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them")). Plaintiff's allegations in this case are equally incredible and based on an indisputably meritless legal theory. The notion that notarized documents evidencing Plaintiff's conviction are somehow "negotiable instruments," and that failure to file and forward them constitutes an actionable "dishonor" requiring his release from prison, is simply delusional.

Furthermore, to the extent that Plaintiff alleges a "denial of access to court claim," he is not entitled to relief. Prisoners have a constitutional right of access to the courts arising from the First Amendment right to petition clause and the guarantee of due process in the Fourteenth Amendment. However, the United States Supreme Court has held that to pursue a claim of denial of access to the courts, an inmate must allege actual injury – that the Defendant's action has hindered his efforts to pursue a non-frivolous legal claim. Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); Jones v. Brown, 461 F.3d 353, 359 n.6 (3d Cir.2006) (affirming the actual injury requirement for access to court claims). Additionally, a complaint alleging an access to court claim must plead the merits of the underlying claim that the plaintiff has been denied access to with specificity in order to survive a Rule 12(b)(6) motion to dismiss. Christopher v. Harbury, 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002).

Here, Plaintiff points to no specific statute or court procedure requiring court personnel to file or forward bogus "negotiable instruments" to a third party as evidence of payment or discharge of a criminal judgment entered against him. Section 3501(b)(3)(ii)of the Uniform Commercial Code expressly permits refusal of acceptance of a presentment "for failure of the presentment to comply with the terms of the instrument, an agreement of the parties or other applicable law or rule." 13 Pa.Cons.Stat.Ann. § 3501(b)(3)(ii). Thus, because Plaintiff's "presentment" utterly fails to meet the definition of a "negotiable instrument," and does not evince any agreement of the parties to unconditionally pay a fixed amount of money, the Defendant had every right to refuse acceptance. 13 Pa.Cons.Stat.Ann. § 3104. Accordingly, Plaintiff has not pled the merits of his underlying claim insofar as he has failed to establish that he is entitled to file bogus "UCC" documents to create civil liability where none exists. Plaintiff,

therefore, has failed to state a claim upon which relief may be granted for any alleged unconstitutional denial of access claim.

Finally, Plaintiff's attempt to use this Court and the Defendant's office to "validate a fictitious lien of some sort," and thereby perpetrate a fraud on the Court is a malicious use of process not countenanced by the IFP process.  See <u>Rodriguez-Isona v. Rendell</u>, No. 1:08-CV-0403, 2008 WL 1787548 (M.D. Pa. 2008).

Accordingly, the Complaint is dismissed as legally frivolous and malicious, and for failure to state a claim upon which relief may be granted.  An appropriate Order will follow.

    /s/   MAUREEN P. KELLY
          U.S. Magistrate Judge

Dated:        September 15, 2011

cc:     TERRENCE RICHARDSON
        GE8020
        SCI FOREST
        P.O. BOX 945
        MARIENVILLE, PA 16239